## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN K. YOUNG,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO.  08-3463** |
| **PHILADELPHIA COUNTY DISTRICT** | : | |
| **ATTORNEY'S OFFICE,** | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

**AND NOW**, this       day of                    , 2008, upon consideration of the Motion

of the Philadelphia County District Attorney's Office to Dismiss Plaintiff's Complaint,

and plaintiff's Response thereto, if any, it is hereby **ORDERED** and **DECREED** that the

Motion to Dismiss is **GRANTED**. Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure, judgment is hereby entered in favor of  Philadelphia District

Attorney's Office and against plaintiff John K. Young, on all claims.


### BY THE COURT:


_____

                                                                                          **J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN K. YOUNG, | : | |
| Plaintiff, | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | **NO. 08-3463** |
| PHILADELPHIA COUNTY DISTRICT | : | |
| ATTORNEY'S OFFICE, | : | |
| Defendant. | : | |

### MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

The Philadelphia County District Attorney's Office ("Office"), by and through undersigned counsel, files the following Motion to Dismiss and moves this Honorable Court to dismiss plaintiff John K. Young's Complaint against it and for entry of judgment in its favor pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Rule" or "Rules"), for the reasons, set forth and more fully developed in the Office's accompanying Memorandum of Law, which is incorporated by reference. Plaintiff has failed to state any claim against the Office upon which relief can be granted.

**WHEREFORE**, for all of the foregoing reasons, defendant, Philadelphia County District Attorney's Office respectfully requests that this Honorable Court grant its Motion to Dismiss plaintiff's Complaint, with prejudice.

Respectfully submitted,

Daren B. Waite
Assistant District Attorney
Civil Litigation Unit
I.D. No. 46061

Philadelphia District Attorney's Office
Civil Litigation Unit, 13th Floor
Three South Penn Square
Philadelphia, PA 19107-3499

Attorney for the Philadelphia County
District Attorney's Office

Date:   November 3, 2008

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN K. YOUNG, | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | **NO. 08-3463** |
| PHILADELPHIA COUNTY DISTRICT | : | |
| ATTORNEY'S OFFICE, | : | |
| **Defendant.** | : | |

## MEMORANDUM OF LAW OF DEFENDANT PHILADELPHIA COUNTY DISTRICT ATTORNEY'S OFFICE IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Daren B. Waite
Assistant District Attorney
Civil Litigation Unit
Attorney I.D. No. 46061
Telephone:  (215) 686-5774
Fax:  (215) 686-9929

Philadelphia District Attorney's Office
Three South Penn Square, 13th Floor
Philadelphia, PA 19107

Attorney for Philadelphia County District
Attorney's Office

Date:  November 3, 2008

## I.   FACTUAL AND PROCEDURAL HISTORY

Plaintiff John K. Young, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff

was arrested and charged with the murder of Marlene Mapp on March 11, 1975. The

Pennsylvania Superior Court described the facts of this case as follows:

> On the morning of March 11, 1975, the decedent, Marlene Mapp, was in her house with her two young children when her next-door neighbor, Jacqueline Mack, heard the sounds of loud screaming and footsteps coming from Ms. Mapp's house. She also heard the decedent's young son crying out to someone to "leave   his mother alone." Ms. Mack immediately called the police and then called over to the decedent's house. Her son, Larry Mapp, who was six years old at the time of the incident, answered the phone and stated to her that his mother had been stabbed.

> Ms. Mack hung up the phone and went to the rear door of the Mapp residence and pushed the door open. She was met by Larry [Mapp] who was covered in blood. The police arrived shortly thereafter, and discovered Ms. Mapp lying wedged against her front door at the foot of the staircase that led to the second floor. There was a trail of blood from a bedroom of the second floor to the bottom of the staircase on the first floor. The decedent's purse was lying open on the living room sofa with its contents strewn about the room. A post-mortem examination revealed that Ms. Mapp died from a loss of blood that resulted from stab wounds that severed vital veins and arteries.

> An examination of the decedent's home disclosed that entry had been gained by someone using a coat hanger to unlatch the door. The front door was still locked when the police arrived, and there was no other evidence of a forced entry.

> After finding physical evidence in the backyard of the Mapp home, the police went to the house directly behind it and apprehended [the plaintiff]. Once he was in custody, he admitted to breaking into the home and killing Ms. Mapp when she attempted to disarm him. He also described how he entered the premises and the actions that he took immediately before and after he stabbed the decedent to death. The information was used to secure a search warrant for the house in which [the plaintiff] lived. Upon the execution of the warrant less than fifteen hours after the crime, the police seized a knife, shoes, pants, and a wash cloth that contained [human blood.]

> Larry Mapp testified at trial and told the jury that he was sleeping in his mother's bed when he was "awakened by voices" and saw [the plaintiff]

on the bed on his knees. He stated that [the plaintiff] ordered the mother to tell Larry to take his five-year old sister out of the room. As Larry left the room, he saw [the plaintiff] pull out a knife. He then ran downstairs to get a knife so that he could attempt to defend his mother. As he was running back upstairs, he saw [the plaintiff] run down the stairs and out the back door. Larry testified that he recognized [the plaintiff] as a person who he had previously seen hanging up clothes in the backyard of the [house] directly to the rear of his own.

Commonwealth v. John K. Young, 873 A.2d 720, 721-22, 2005 Pa. Super. 142 (2005),

appeal denied, 589 Pa. 739, 891 A.2d 733 (2005) (pro se appeal from the order denying

plaintiff's request for DNA testing pursuant to 42 Pa. C.S.A. § 9542.1, which was

affirmed by the Pennsylvania Supreme Court). See a copy of the Superior Court opinion

attached as Exhibit A. On August 26, 1975, the plaintiff was convicted of second degree

murder, robbery, burglary, and possessing an instrument of crime. Id. at 722.

Subsequently, the plaintiff was later sentenced to a mandatory term of life imprisonment

for the murder conviction and a concurrent ten to twenty years' imprisonment for the

burglary conviction. The sentence was suspended on the two remaining convictions. Id.[1]

---

[1] Plaintiff appealed directly to the Supreme Court of Pennsylvania from the judgment of sentence imposed on the murder conviction. An appeal from the judgment of sentence on the burglary conviction was filed in Superior Court and later certified in the Supreme Court. In this appeal, plaintiff's only claim for relief was his allegation that the prosecutor utilized improper remarks and innuendo in his closing argument to the jury. On March 23, 1978, the Supreme Court affirmed plaintiff's judgment of sentence. See Commonwealth v. Young, 477 Pa. 212, 383 A.2d 899 (1978).

On September 24, 1979, the plaintiff filed his first pro se Post Conviction Hearing Act ("PCHA") petition. Private counsel was appointed for plaintiff, and the amended petition included a claim that the plaintiff's inculpatory statement was obtained unconstitutionally and in violation of his rights as a juvenile at the time he was questioned by police personnel. On April 13, 1982, the PCHA Court dismissed the petition, and the dismissal was affirmed by the Superior Court on the grounds that his trial counsel could not have been "ineffective" because the confession was never introduced into evidence at trial. See Commonwealth v. Young, 318 Pa.Super. 538, 465 A.2d 684 (1983).

On September 4, 2008, plaintiff John K. Young filed a Complaint in this Court ("the Complaint"). See a copy of the civil dockets and Complaint to this action attached as Exhibits B and C, respectively. Plaintiff named the Philadelphia County District Attorney's Office ("the Office") as a defendant. Plaintiff requested that the Office waive service of summons, and on September 4, 2008, attorney for the Office executed the waiver of service of a summons. See Exhibits B and C.

Plaintiff's Complaint claims that the Office violated plaintiff's constitutional rights in denying plaintiff DNA testing and access to exculpatory physical evidence. Complaint, ¶¶ 1-3, 6-7, and 9. Plaintiff adds that the Office's alleged constitutional violations consisted of violation of the due process clause of the Fourteenth Amendment, the confrontation clause and compulsory process clause of the Sixth Amendment, and the cruel and unusual punishment clause of the Eighth Amendment. Complaint, ¶¶ 1-9.

All of the claims asserted against the Office should be dismissed pursuant to either Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule" or "Rules").

## II.      ARGUMENT

### A.      THE COMPLAINT MUST BE DISMISSED DUE TO LACK OF SUBJECT MATTER JURISDICTION TO ENTERTAIN THE CLAIMS IN THE COMPLAINT UNDER AND PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1).

Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule(b)(1) and the Rooker-Feldman doctrine, because plaintiff's claims are inextricably intertwined with state court proceedings.

The essence of plaintiff's civil rights lawsuit against the Office is that the Office violated his rights to DNA evidence and his right to DNA testing by "using an unused

confession as a means to bar plaintiff from asserting 'actual innocence.'" Complaint, ¶¶ 1-3. Plaintiff raised these claims in state court. By requesting DNA testing to prove his alleged innocence, plaintiff is seeking to undo his state court judgments. Because plaintiff has pursued these claims at the state court level, and the state courts have already rejected them, this Court lacks subject matter jurisdiction under Rule 12(b)(1) pursuant to the Rooker-Feldman doctrine and plaintiff's claims should be dismissed.

Under the Rooker-Feldman doctrine, federal district courts lack subject matter jurisdiction over claims that are inextricably intertwined with a prior state court action, even if the claims were not raised in the state court action. See Parkview Associates Partnership v. City of Lebanon, 225 F.3d 321, 327 (3d Cir. 2000); see also Valley Forge Specialized Educ. Services, Civ. A. No. 03-3894, 2004 U.S. Dist. LEXIS 20655, at *13 (E.D. Pa. October 13, 2004). In District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 (1983), the Supreme Court explained that this jurisdictional rule is "eminently defensible on the policy grounds [i.e., reinforcement of] the competence of state courts to adjudicate federal constitutional claims."

Under the Rooker-Feldman doctrine, federal district courts lack subject matter jurisdiction over challenges to state court decisions. Daily v. Daily, 96 F. Supp. 2d 463, 466 (E.D. Pa. 2000). A federal proceeding is an impermissible challenge to a state court decision under Rooker-Feldman when entertaining the federal claim would be equivalent to appellate review of the state court determination. FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996).[2] The Third Circuit has made it clear

---

[2] This doctrine applies to judgment of both a state's highest and lowest courts. Port Authority Police Benevolent Assoc., Inc. v. Port Authority of New York and New Jersey Police Dept., 973 F.2d 169, 178 (3d Cir. 1992).

that federal district courts cannot review constitutional claims that have been previously adjudicated in state court or that are "inextricably intertwined" with the state court's adjudication. Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir. 1992), citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). A federal claim is "inextricably intertwined" with a state court adjudication, "where federal relief can be predicated upon a conviction that the state court was wrong." Centifanti v. Nix, 865 F.2d 1422, 1430 (3d Cir. 1989), quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987)(Marshall, J., concurring).

The Rooker-Feldman doctrine precludes the exercise of jurisdiction even when the plaintiff brings his or her action under federal civil rights statutes. Marks v. Stinson, 19 F.3d 873, 885 (3d Cir. 1994) (quoting Port Authority v. Richmond, 973 F.2d 169, 177 (3d Cir. 1992)(according to the Rooker-Feldman doctrine, lower federal courts lack subject matte jurisdiction to engage in appellate review of state court determinations or to evaluate constitutional claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding."); Gash Assoc. v. Village of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993); Liedel v. Juvenile Court of Madison County, 891 F.2d 1542 (11th Cir. 1990). A plaintiff may not attempt to reverse a state court decision simply by casting his or her complaint in the form of a civil rights action. Id; see also Alteose v. Charleston Township, Civ. A. No. 98-2862, 1999 WL 179759, at *2 (E.D. Pa. March 23, 1999) aff'd, 205 F.3d 1328 (3d Cir 1999) (disappointed plaintiff. through artful pleading in federal court, may not attempt to reverse a decision of the Pennsylvania state courts); Logan v. Lillie, 965 F. Supp. 695, 698 (E.D. Pa. 1997), aff'd, 142 F.3d 428 (3d Cir. 1998) (Rooker-Feldman does not "permit a disappointed state plaintiff to seek review of

a state court decision in federal court by masquerading his complaint in the form of a
federal civil rights action").

Plaintiff appealed the judgment from the Court of Common Pleas of Philadelphia
County, which denied his request for DNA testing pursuant to 42 Pa. C.S. § 9543.1 of the
Post-Conviction Relief Act ("PCRA"). Commonwealth v. Young, 873 A. 2d 720 (Pa.
Super. 2005), appeal denied, 586 Pa. 739, 891 A.2d 733 (2005). See Exhibit A. In the
underlying criminal case, the plaintiff was tried and convicted for murder, robbery,
burglary, and possessing an instrument of crime. After his direct appeal and post-
conviction processes concluded, plaintiff filed a motion under 42 Pa. C.S. 9543.1 of the
PCRA for DNA testing of the blood-stained articles that had linked plaintiff to the crime.
Id. at 722-23. The motion was dismissed, and plaintiff appealed. Id. at 724. The Superior
Court affirmed the lower court order denying plaintiff's request for DNA testing. The
court found that, while some of the lower court's factual findings were incorrect, the
motion was properly dismissed because the plaintiff did not meet the prima facie
requirements of § 9543.1 necessary to entitle him to DNA testing. Id. at 727. Although
plaintiff claimed actual innocence in his motion, plaintiff's confession to the crime barred
his claim of actual innocence for the criminal offenses for which the plaintiff was
convicted because that confession was litigated to be fully valid, not coerced, and
knowingly and voluntarily given. Id. Even if the lower court found that the confession did
not bar recourse under § 9543.1, the conviction could not be reversed through DNA
testing because there was substantial and unequivocal identification evidence, other than
blood evidence, that was presented to the jury for their consideration. Even though
plaintiff challenged the credibility of the eyewitnesses, sufficient evidence of identity

existed at trial to preclude plaintiff's actual innocence of the offense for which the

plaintiff was convicted and relief under § 9543.1. Id. at 727-28.

Since the appropriate place for plaintiff to request DNA testing is in state court,

the Court should dismiss the claims against the Office under Rule 12 (b)(1) for lack of

subject matter jurisdiction.

**B.** **ALL CLAIMS AGAINST THE DEFENDANTS SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).**

Even if there was subject matter jurisdiction, plaintiff's claims should be

dismissed pursuant to Rule 12(b)(6). In determining whether to dismiss a complaint

pursuant to Rule 12(b)(6), courts must:

> take all the well-pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.

Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988)(quoting Estate

of Bailey by Oare v. County of York, 768 F.2d 503, 506 (3d Cir. 1985)), cert. denied, 489

U.S. 1065 (1989). Courts "need not credit a complaint's 'bald assertions' or 'legal

conclusions' when deciding a motion to dismiss." Morse v. Lower Merion School

District, 132 F.3d 902, 906 (3d Cir. 1997). The court must determine whether, under any

reasonable reading of the pleadings, the plaintiff may be entitled to relief. Long v.

Administration of Montgomery Hospital, 2000 U.S. Dist. LEXIS 15506 (E.D. Pa. 2000);

Caswell v. Morning Call, 1996 U.S. Dist. LEXIS 14516 (E.D. Pa. 1996).

Even if this Court had jurisdiction, applying these principles to the present case,

the Complaint should be dismissed under Rule 12(b)(6), because: (a) Heck v. Humphrey,

512 U.S. 477 (1994), precludes plaintiff from challenging the validity of his underlying

conviction, which has not been reversed or otherwise called into question, in this lawsuit; (b) plaintiff's claims are barred by the statute of limitations; and (c) the Philadelphia County District Attorney's Office is not a proper party in this case. Applying these principles to the present case, plaintiff has failed to state a claim upon which relief can be granted. Consequently, for the aforementioned reasons, the Court should dismiss the claims against the Office.

In addition, in the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321 -77, Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. The authority granted to federal courts for sua sponte screening and dismissal of prisoner claims in that Act is applicable to this case. Specifically, Congress enacted new statutory provisions at 28 U.S.C. §1915A, entitled "Screening," which requires the Court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A (a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the Court must dismiss the complaint. 28 U.S.C. § 1915A (b).

Also, Congress significantly amended Title 28 of the United States code, section 1915, which establishes the criteria for allowing an action to proceed in forma pauperis ("IFP"), i.e., without payment of costs. Section 1915(e)(as amended) requires the federal courts to review complaints filed by persons that are proceeding in forma pauperis and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on

which relief may be granted, or seeks monetary relief against a defendant who is immune

from such relief. 28 U.S.C. § 1915(e) (2) (B).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA[3] and he

is seeking redress from a governmental entity. In addition, plaintiff has been granted

leave to proceed in forma pauperis. Thus, plaintiff's allegations must be reviewed in

accordance with 28 U.S.C. §§ 1915A and 1915(e). In reviewing complaints under 28

U.S.C. §§ 1915A and 1915(e), a federal court applies the same standard applied to

motions to dismiss under Rule 12(b) (6).[4] Dismissal is proper under Rule 12(b) (6) if, as a

matter of law, it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations. Balisteri v. Pacifica Police Department, 901 F. 2d

696, 699 (9th Cir. 1990).

    1.    **The Complaint Must Be Dismissed Because Plaintiff May Not
Challenge The Validity Of His Underlying Conviction, Which Has
Not Been Reversed Or Otherwise Called Into Question, In This
Lawsuit.**

All of plaintiff's claims and plaintiff's case should be dismissed under Heck v.

Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held:

> When a state prisoner seeks damages in a § 1983 suit, the district
> court must consider whether a judgment in favor of the plaintiff
> would necessarily imply the invalidity of his conviction or
> sentence; if it would, the complaint must be dismissed unless the

---

[3] Sections 1915 and 1915A, as amended, define the term "prisoner" as "any person
incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or
adjudicated delinquent for, violations of criminal law or the terms and conditions of
parole, probation, pretrial release, or diversionary program." See 28 U.S.C. §§ 1915(h);
1915A(c).

[4] See, e.g., Anyanwutaku v. Moore, 331 U.S. App. D.C. 379, 151 F.3d 1053 (D.C. Cir.
1998); Mitchell v. Farcass, 112 F.3d 1483, 1484 (11th cir. 1997); Powell v. Hoover, 956
F. Supp. 564, 568 (M.D. Pa. 1997)(applying Rule12(b)(6) standard to claim dismissed
under 28 U.S.C. § 1915(e)(2)(B)(ii)); Tucker v. Angelone, 954 F. Supp. 134 (E.D. Va.
1997), aff'd, 116 F.3d 473(4th Cir. 1997).

> plaintiff can demonstrate that the conviction or sentence has
> already been invalidated.

Id. at 487; see also Muhammad v. Close, 540 U.S. 749, 751 (2004); Edwards v. Balistok,
520 U.S. 641, 645-47 (1997).

Applying Heck, plaintiff's allegations and request for damages necessarily challenges and calls into question the validity of the underlying conviction. As a result of this, plaintiff's suit also fails. Plaintiff's convictions have not been reversed or otherwise called into question. Therefore, pursuant to the doctrine set forth in Heck, plaintiff may not pursue his claims here, collaterally attacking his state court prosecutions and resultant convictions in this federal civil rights suit.

In Heck, the Court held that a convicted criminal defendant could not bring a federal civil rights suit for monetary relief arising out of an allegedly unlawful criminal prosecution unless the criminal prosecution has been reversed or otherwise called into question. Heck's § 1983 complaint alleged that, inter alia, that prosecutors and police knowingly destroyed exculpatory evidence. The Court found that these allegations challenged the legality of Heck's conviction, which had not been invalidated or overturned and, accordingly, dismissed Heck's § 1983 action. The Court stated:

> [I]n order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, a
> §1983 plaintiff must prove that the conviction or sentence has been
> reversed on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such determination,
> or called into question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that
> relationship to a conviction or sentence that has not been so
> invalidated is not cognizable under §1983.

Id. at 486-87 (footnote omitted)(original emphasis).

Plaintiff's request for DNA testing asserts that his present convictions and sentences are invalid. Since plaintiff's claims against the Office amount to a challenge of his convictions and sentences, which have not been invalidated or otherwise called into question, they are barred by <u>Heck</u>. <u>See also</u> <u>Webb v. Goldstrin</u>, 117 F. Supp.2d 289, 294 (E.D.N.Y. 2000)(<u>Heck</u> barred plaintiff's § 1983 claim that prosecutors violated his constitutional rights by withholding material evidence from the defense since the claim implicated the validity of his conviction which had not been reversed, invalidated, or expunged); <u>Boyd v. Biggers</u>, 31 F.3d 279, 283-84 (5th Cir. 1994)(plaintiff's § 1983 action challenged state conviction or sentence and, as such, was precluded by <u>Heck</u>, absent showing that state conviction or sentence had been reversed, expunged, invalidated or expunged by grant of writ of habeas corpus) ); <u>Long v. Atlantic City Police Department</u>, Civ. A. No. 06-0785, 2006 U.S. Dist. LEXIS 61830, *5-6 (D.N.J. August 16, 2006) (<u>Heck</u> bars plaintiff's claims against defendants of alleged withholding exculpatory evidence, testifying falsely at his criminal trial, conspiring to cover-up the truth and prevent DNA testing, which would allegedly exonerate the plaintiff).

In order to be barred by <u>Heck</u>, a claim need only "imply the invalidity of his conviction," not directly challenge it. <u>Heck</u>, 512 U.S. at 487. That is precisely what plaintiff's claim does here. Thus, plaintiff's § 1983 claims which necessarily imply the invalidity of the plaintiff's convictions are not cognizable under § 1983 at this time. Consequently, this suit should be dismissed.

2.    **All of Plaintiff's Claims Against The Office Are Barred By The Statute Of Limitations Because Plaintiff Filed His Complaint More Than Two Years After He Became Aware Of His Alleged Injuries**

Even though, the <u>Rooker</u>-<u>Feldman</u> and <u>Heck</u> defenses should be successful, because all of plaintiff's claims arose in 1975, plaintiff filed a PCRA in 2002 requesting the court to order DNA testing, and that plaintiff did not file his §1983 civil rights Complaint until September 4, 2008, all of plaintiff's claims should be dismissed because they are time-barred. <u>See</u> state court docket entries and Complaint attached as Exhibits B and C, respectively; <u>see also</u> Exhibit A.  The statute of limitations bars the plaintiff's constitutional claims.

Claims for constitutional violations are governed by state statute of limitations for personal injury claims. Pennsylvania's two-year statute of limitations for personal injury is the applicable limitations period. See <u>Wilson v. Garcia</u>, 471 U.S. 261, 279-80 (1985); <u>Petaccio v. Davis</u>, 76 Fed. Appx. 442, 444-45 (3d Cir. 2003) (indicating that the statute of limitations period for a Section 1983 claim is governed by the state personal injury statute of limitations); <u>Sameric Corp. of Delaware v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998) (citing 42 Pa. C.S. Section 5524 which provides the applicable two-year statute of limitations); <u>see also</u> <u>Smith v. Pittsburgh</u>, 764 F.2d 188, 194 (3d Cir. 1985), cert. denied, 474 U.S. 950 (1985) (federal constitutional claims are governed by Pennsylvania's two-year statute of limitations). In Pennsylvania, a plaintiff must bring a cause of action within two years of the injury giving rise to the alleged violations. 42 Pa.C.S.A. § 5524.

Under federal law, in Pennsylvania, a cause of action in tort accrues on the date of the injury. <u>Bruffett v. Warner Communications, Inc</u>. 534 F.Supp.375, 377 (E.D. Pa.

1982), aff'd, 692 F.2d 910 (3d Cir. 1982). "It is axiomatic that under federal law, which

governs the accrual of Section 1983 claims, the limitations period begins to run from the

time when the plaintiff knows or has reason to know of the injury which forms the basis

of his Section 1983 action.". Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir.

1998) (internal quotations omitted). See also MacNamara v. Hess, 67 Fed. Appx. 139,

143 (3d Cir. 2003); Gentry v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991);

Bougher v. University of Pittsburgh, 882 F.2d 74, 78 (3d Cir. 1989) ("Because [plaintiff]

failed to allege any unlawful acts actionable under section 1983 during the two year

[limitation] period ... [plaintiff] fails to state a cause of action under section 1983").

In this case, the alleged actions giving rise to plaintiff's claims occurred, at the

very latest, March 11, 1975, the date the plaintiff was arrested and imprisoned by the City

of Philadelphia Police Department. See Exhibit A. At the latest, plaintiff knew that he

wanted DNA testing on November 27, 2002, when he filed a motion pursuant to PCRA

requesting the court to order DNA testing of blood stained articles. See Exhibit A. At that

time, plaintiff knew or should have known that he supposedly was wrongfully arrested

and imprisoned. MacNamara v. Hess, 67 Fed. Appx. 139, 143 (3d Cir. 2003) (any

Fourth-Amendment-based claim accrued on the same day as the alleged Fourth

Amendment violation).

Plaintiff waited more that two years after his arrest, on March 11, 1975, before

pursuing his alleged civil rights and federal constitutional claims. See Exhibits A, B, and

C. The two-year statute of limitations period is imposed to discourage such delays in

filing. "Although any statute of limitations is necessarily arbitrary, the length of the

period allowed for instituting suit inevitably reflects a value judgment concerning the

point at which the interests in favor of protecting valid claims are outweighed by the interest in prohibiting the prosecution of stale ones." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-464 (1975).

Plaintiff's Complaint was not filed until September 4, 2008, well after the limitation period had expired. Plaintiff failed to meet his required deadline. Therefore, because plaintiff filed his Complaint outside the applicable two-year limitations period, plaintiff's federal constitutional and civil rights claims are time-barred, cannot proceed, and should be dismissed from this action with prejudice. The Court should grant the DA defendants' motion to dismiss pursuant to Rule 12(b)(6).

### 3. All Of Plaintiff's Claims Against The Office Should Be Dismissed Because The Office Is Not A Proper Party In This Case.

The Office is not a proper party in this case. Plaintiff's § 1983 claims against the Office cannot stand because the Office is not a separate legal entity that can be sued under 28 U.S.C. §1983. In Reitz v. County of Bucks, the Third Circuit recognized that a district attorney's office is not an entity for purposes of § 1983 liability. Reitz v. County of Bucks, 125 F.3d 139, 148 (3d Cir. 1997). Moreover, "pursuant to section 11 of the Act of April 21, 1855, P.C. 264, 53 P.S. § 16257, all suits against any department of the City must be brought in the name of the City itself because the departments of the City do not have an independent corporate existence." City of Philadelphia v. Glim, 149 Pa. Commw. 491, 613 A.2d 613, 616 (Pa. Commw. 1992); see also Cruz v. City of Philadelphia, Civ. A. No. 07-493, 2007 U.S. Dist. LEXIS 57626, *17 (E.D. Pa. August 7, 2008) (the Philadelphia District Attorney's Office is not a separate legal entity for purposes under § 1983, and therefore cannot be sued under § 1983); Domenech v. City of Philadelphia, Civ. A. No. 06-1325, 2007 U.S. Dist. LEXIS 3921, *6-7 (E.D. Pa. January 18, 2007) (the

Office of the District Attorney of Philadelphia County is not a proper party in a §1983 civil rights action); <u>Dickerson v. Montgomery County DA's Office</u>, Civ. A. No. 04-4454, 2004 U.S. Dist. LEXIS 25033, 2004 WL 2861869, *2-3 (E.D. Pa. December 10, 2004)(stating that District Attorney's Office is not an entity for purposes of § 1983 liability (citing <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 144 (3d Cir. 1997)); <u>Atkinson v. City of Philadelphia</u>, Civ. A. No. 99-1541, 2000 U.S. Dist. LEXIS 3153, 2000 WL 295106, at *2 (E.D. Pa. March 20, 2000) (finding that all suits brought against a department of the City of Philadelphia "must be brought in the name of the City of Philadelphia"). Since the Office cannot be sued apart from the City of Philadelphia, all claims against the Office must be dismissed and the Motion to Dismiss should be granted.

## III.    CONCLUSION

For all of the reasons stated above, this Court should dismiss the claims against the Philadelphia District Attorney's Office for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Daren B. Waite
Assistant District Attorney
Civil Litigation Unit
Attorney I.D. No. 46061
Telephone:  (215) 686-5774
Fax:  (215) 686-9929

Philadelphia District Attorney's Office
Three South Penn Square, 13th Floor
Philadelphia, PA 19107

Attorney for Philadelphia County District
Attorney's Office

Date:  November 3, 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN K. YOUNG,                          :
      Plaintiff,                   :
                     :     **CIVIL ACTION**
     v.                              :
                     :     **NO.  08-3463**
PHILADELPHIA COUNTY DISTRICT :
ATTORNEY'S OFFICE,                      :
      Defendant.                   :

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this date, the following Motion of the

Philadelphia District Attorney's Office to Dismiss Plaintiff's Complaint and supporting

Memorandum of Law were served by first class mail, postage prepaid to the following

individual:

John K. Young (ID #AF5996)
State Correctional Facility at Dallas
1000 Follies Road
Dallas, PA 18612

                           By: _____
                               Daren B. Waite
                               Assistant District Attorney

Date:  November 3, 2008

# EXHIBIT  A

LexisNexis™  *Total Research System*
Switch Client ┆ Preferences ┆ Sign Out ┆ 🔲 Help

Search ▼ Research Tasks ▼ Get a Document ▼ *Shepard's®* ▼ Alerts ▼ Transactional Advisor ▼ Counsel Selector ▼ H

**FOCUS™** Terms        Search Within  Original Results (1 - 1)        Go →
Advanced...

Service: **Get by LEXSEE®**
Citation: **2005 PA Super 142**

*2005 PA Super 142, \*; 873 A.2d 720, \*\*;*
*2005 Pa. Super. LEXIS 902, \*\*\**

COMMONWEALTH OF PENNSYLVANIA, Appellee v. JOHN K. YOUNG, Appellant

No. 2370 EDA 2003

SUPERIOR COURT OF PENNSYLVANIA

2005 PA Super 142; 873 A.2d 720; 2005 Pa. Super. LEXIS 902

July 6, 2004, Submitted
April 21, 2005, Filed

**SUBSEQUENT HISTORY:** Appeal denied by Commonwealth v. Young, 586 Pa. 739, 891 A.2d 733, 2005 Pa. LEXIS 2917 (2005)

**PRIOR HISTORY:** **[\*\*\*1]** Appeal from the Order of the Court of Common Pleas of Philadelphia County, Criminal Division, March Term, 1975, No. 2369 1/1. Before ROGERS, J. Young v. Frank, 1996 U.S. Dist. LEXIS 7139 (E.D. Pa., May 22, 1996)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant appealed a judgment from the Court of Common Pleas of Philadelphia County (Pennsylvania), which denied his request for DNA testing pursuant to 42 Pa. Cons. Stat. § 9543.1.

**OVERVIEW:** Defendant was tried and convicted for murder. After his direct appeal and post-conviction processes concluded, he filed a motion under 42 Pa. Cons. Stat. § 9543.1 of the Post-Conviction Relief Act (PCRA) for DNA testing of the blood-stained articles that had linked him to the crime. The motion was dismissed, and defendant appealed. The court found that, while some of the lower court's factual findings were incorrect, the motion was properly dismissed because defendant did not meet the prima facie requirements of § 9543.1 to entitle him to DNA testing. Although he claimed actual innocence in his motion, his confession to the crime barred his claim of actual innocence because that confession was litigated to be fully valid, not coerced, and knowingly and voluntarily given. Even if the confession did not bar recourse under § 9543.1, the conviction could not be reversed through DNA testing because there was substantial identification evidence, other than the blood evidence, that was presented to the jury for their consideration. Even though defendant challenged the credibility of the eyewitnesses, sufficient evidence of identity existed at trial to preclude relief under § 9543.1.

**OUTCOME:** The court affirmed the order denying defendant's request for DNA testing.

**CORE TERMS:** testing, blood, confession, innocence, perpetrator, juvenile, murder, knife, identification, post conviction, convicted, decedent, door, treating, pro se, physical evidence, requesting, sentence, deceased, expert witnesses, imprisonment, washcloth, confirmed, burglary, untimely, bedroom, matched, floor, facie, rear

**LEXISNEXIS® HEADNOTES**                                                      ⊟ **Hide**

Criminal Law & Procedure > Postconviction Proceedings > General Overview 🔖
Evidence > Scientific Evidence > DNA 🔖

**HN1** ✛ A motion for DNA testing constitutes a post conviction petition under the Post-Conviction Relief Act (PCRA), regardless of the title of the document filed. An appellant's motion for DNA testing, filed in advance of utilizing the PCRA as a vehicle to obtain DNA results, avoids the one-year time bar of 42 Pa. Cons. Stat. § 9545. More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Postconviction Proceedings > General Overview 🔖
Evidence > Scientific Evidence > DNA 🔖

**HN2** ✛ See 42 Pa. Cons. Stat. § 9543.1.

Criminal Law & Procedure > Postconviction Proceedings > General Overview 🔖
Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > General Overview 🔖
Evidence > Scientific Evidence > DNA 🔖

**HN3** ✛ While a confession, in and of itself, generally would not bar a 42 Pa. Cons. Stat. § 9543.1 request for DNA testing to prove actual innocence, an appellant cannot assert a claim of actual innocence where the validity of the confession has been finally litigated, found not to be coerced, and was knowingly and voluntarily given. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** John Young appellant, Pro Se.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

**JUDGES:** Before: HUDOCK, MONTEMURO * and KELLY, JJ. OPINION BY HUDOCK, J.

• Retired Justice assigned to Superior Court.

**OPINION BY:** HUDOCK

**OPINION**

**[\*\*721]** OPINION BY HUDOCK, J.:

**[\*P1]** This is a *pro se* appeal from the order denying Appellant's request for DNA testing pursuant to 42 Pa. C.S.A. section 9543.1. For the reasons that follow, we affirm.

**[\*P2]** The lower court summarized the pertinent facts and procedural history of the case as follows:

On the morning of March 11, 1975, the decedent, Marlene Mapp, was in her **[\*\*722]** house with her two young children when her next-door neighbor, Jaqueline Mack, heard the sounds of loud screaming and footsteps coming from Ms. Mapp's house. She also heard the decedent's young son crying out to someone to "leave his mother alone". Ms. Mack immediately called the police and then called over to the decedent's house. Her son, Larry Mapp, who was six years old at the time of the incident, answered the phone and stated to her that his mother had been stabbed.

Ms. Mack hung **[\*\*\*2]** up the phone and went to the rear door of the Mapp residence and pushed the door open. She was met by Larry [Mapp] who was covered with blood. The police arrived shortly thereafter, and discovered Ms. Mapp lying wedged against her front door at the foot of the staircase that led to the second floor. There was a trail of blood from a bedroom on the second floor to the bottom of the staircase on the first floor. The decedent's purse was lying open on the living room sofa with its contents strewn about the room. A post-mortem examination revealed that Ms. Mapp died from a loss of blood that resulted from stab wounds that severed vital veins and arteries.

An examination of the decedent's home disclosed that entry had been gained by someone using a coat hanger to unlatch the door. The front door was still locked when the police arrived, and there was no other evidence of a forced entry.

After finding physical evidence in the backyard of the Mapp home, the police went to the house directly behind it and apprehended the defendant. Once he was in custody, he admitted to breaking into the home and killing Ms. Mapp when she attempted to disarm him. He also described how he entered the premises **[\*\*\*3]** and the actions that he took immediately before and after he stabbed the decedent to death. That information was used to secure a search warrant for the house in which [Appellant] lived. Upon the execution of the warrant less than fifteen hours after the crime, the police seized a knife, shoes, pants, and a washcloth that contained [human blood.]

Larry Mapp testified at trial and told the jury that he was sleeping in his mother's bed when he was "awakened by voices" and saw [Appellant] on the bed on his knees. He stated that [Appellant] ordered the mother to tell Larry to take his five-year old sister out of the room. As Larry left the room, he saw [Appellant] pull out a knife. He then ran downstairs to get a knife so that he could attempt to defend his mother. As he was running back upstairs, he saw [Appellant] run down the stairs and out the back door. Larry testified that he recognized [Appellant] as a person who he had previously seen hanging up clothes in the backyard of the [house] directly to the rear of his own.

\* \* \*

[Appellant] was charged with the murder of Marlene Mapp on March 11, 1975. [Appellant] was tried before the Honorable Theodore B. Smith, **[\*\*\*4]** with a jury, and he was convicted of second-degree murder, robbery, burglary, and possessing an instrument of crime on August 26, 1975. He was later sentenced to a mandatory term of life imprisonment for the murder conviction and a concurrent ten to twenty years' imprisonment for the burglary conviction. Sentence was suspended on the two remaining convictions.

[Appellant appealed directly to the Supreme Court of Pennsylvania from the judgment of sentence imposed on the murder conviction. An appeal from **[\*\*723]** the judgment of sentence imposed on the burglary conviction was

filed in the Superior Court and later certified in the Supreme Court.] In that appeal, his only claim for relief was his allegation that the prosecutor utilized improper remarks and innuendo in his closing argument to the jury. [The Supreme Court affirmed his judgment of sentence on March 23, 1978. **See** **_Commonwealth v. Young_**, 477 Pa. 212, 383 A.2d 899 (1978)].

On September 24, 1979 [Appellant] filed his first *pro se* Post Conviction Hearing Act ("PCHA") petition. Private counsel was appointed for him, and the amended petition included the claim that [Appellant's] inculpatory statement was **[\*\*\*5]** obtained unconstitutionally and in violation of his rights as a juvenile at the time he was questioned by police personnel. The PCHA court dismissed the petition on April 13, 1982, and the dismissal was affirmed by the Superior Court on the grounds that his trial counsel could not have been "ineffective" because the confession was never introduced into evidence at trial. [See **_Commonwealth v. Young_**, 318 Pa. Super. 538, 465 A.2d 684 (Pa. Super. 1983).]

[Appellant] filed a second *pro se* PCHA petition on November 3, 1986, and that petition was dismissed without a hearing on May 31, 1989. In that petition, he argued that it was reversible error for the trial court to have allowed the introduction of the physical evidence that was seized from his residence because he contended that it was the "tainted fruit" of his involuntary confession. The Superior Court affirmed the dismissal of his second PCHA petition in a "memorandum opinion" that was dated August 20, 1993, and [the court] also held that [Appellant's] confession was, in fact, voluntary. [See **_Commonwealth v. Young_**, 432 Pa. Super. 693, 635 A.2d 209 (Pa. Super. 1993) (unpublished **[\*\*\*6]** memorandum). Thereafter the Supreme Court denied Appellant's petition for allowance of appeal. **See _Commonwealth v. Young_**, 537 Pa. 632, 642 A.2d 485 (1994)].

Trial Court Opinion, 3/17/04, at 3-5, 1-3. On November 27, 2002, Appellant filed a motion pursuant to the Post-Conviction Relief Act ¹ (PCRA) requesting the court to order DNA testing of the blood stained articles which had been removed from his home and which the Commonwealth introduced at trial as having on them blood which was consistent with the victim's blood type. The Commonwealth filed a brief in opposition on June 2, 2003. On that same date, the court sent a notice of its intent to dismiss the petition, pursuant to Pa. R. Crim. P. 907. Appellant filed a response on June 17, 2003, and on July 3, 2003, the court dismissed the petition without a hearing. This appeal followed. The court directed Appellant to file a concise statement of matters complained of on appeal, Appellant complied, and the court has filed an opinion addressing the claims.

## FOOTNOTES

1 42 Pa. C.S.A. §§ 9541-46.

**[\*\*\*7]    [\*P3]** Appellant now presents for our consideration the sole issue of whether the "lower court erred in dismissing [his] Motion for Post Conviction DNA testing under new amendment [42 Pa. C.S.A. section 9543.1] after treating such motion as [a PCRA] petition." Appellant's Brief at 3. Appellant's argument is two-fold. First, Appellant contends that the trial court erred in treating his request for DNA testing as a PCRA petition. Secondly, he asserts that he has satisfied the directives of section 9543.1 and, as such, is entitled to DNA testing.

**[\*P4]** With respect to Appellant's first argument that the trial court improperly treated his request for DNA testing **[\*\*724]** as a PCRA petition, we find it to be not only without merit

but also non-dispositive of his request for DNA testing. Appellant claims that, although he used the standard form for PCRA petitions, the court erred in treating it as a PCRA motion because his petition clearly stated "Motion for Post Conviction DNA Testing." Appellant challenges the court and the Commonwealth's reference to his request for DNA testing as his third PCRA petition. Appellant argues that had the court truly treated **[\*\*\*8]** his request as a PCRA petition, pursuant to the time requirements of the PCRA, his petition should have been considered untimely, and the court should have dismissed the petition without ruling on its merits. However, Appellant points out that while the court and Commonwealth refer to his request as a PCRA petition, they, in fact, treated it as a motion for DNA testing and addressed his request on the merits. Thus, Appellant requests that this Court "clarify the record by treating this appeal as an appeal from the denial of [his] Motion for Post Conviction DNA test and not as an appeal from [a] PCRA petition." Appellant's Brief at 8. While Appellant's argument is inartfully phrased, it is apparent that Appellant is concerned that we may treat his request for DNA testing as an untimely PCRA petition. Appellant's concerns, however, are unsubstantiated. In *__Williams v. Erie County District Attorney's Office__*, 2004 PA Super 127, 848 A.2d 967, 969 (Pa. Super. 2004), *appeal denied*,___Pa.___, 864 A.2d 530 (2004), we found that *HN1*a motion for DNA testing constitutes a post conviction petition under the PCRA "regardless of the **[\*\*\*9]** title of the document filed." We further reiterated that "an appellant's 'motion for DNA testing (filed in advance of utilizing the PCRA as a vehicle to obtain DNA results) avoids the one year time bar of 42 Pa. C.S.A. § 9545.'" *Id*. (quoting *__Commonwealth v. McLaughlin__*, 2003 PA Super 405, 835 A.2d 747, 750 (Pa. Super. 2003)). *See generally, __Commonwealth v. Heilman__*, 2005 PA Super. 19, 867 A.2d 542 (Pa. Super., filed January 18, 2005) (treating motion for DNA testing as timely PCRA petition pursuant to 42 Pa. C.S.A. section 9543.1). Thus, in this instance, both the PCRA court and the Commonwealth properly treated Appellant's request for DNA testing pursuant to section 9543.1 as a PCRA petition. ² The PCRA court further correctly found that this request survived the one-year time bar proscribed by section 9545 and addressed Appellant's request on its merits.

### FOOTNOTES

2 Our decision today does not conflict with the holding in *__Commonwealth v. Weeks__*, 2003 PA Super 320, 831 A.2d 1194 (Pa. Super. 2003), wherein we recognized that a motion for DNA testing should be made separately from and before a PCRA petition is filed. While we are cognizant that a motion for DNA testing is a prerequisite to a PCRA petition requesting relief, the fact remains that a filing pursuant to section 9543.1 requesting DNA testing is a post conviction filing. Thus, while filing a motion for DNA testing is preferred, where as here, a *pro se* defendant's sole request in a PCRA petition is the equivalent of a section 9543.1 motion, we find that the trial court and this Court may address it on its merits. To consider a request for DNA testing as untimely based solely on the nomenclature used would merely elevate form over substance.

**[\*\*\*10]  [\*P5]** Having determined the propriety of Appellant's petition for review, we must next address whether Appellant has satisfied the *prima facie* requirements set forth in section 9543.1 necessary to entitle him to the requested DNA testing. Section 9543.1 provides in relevant part:

#### *HN2*§ 9543.1 Postconviction DNA testing

(a) Motion.--

> (1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment . . . may apply

by making a written motion to the sentencing [**725] court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

* * *

(c) Requirements.--In any motion under subsection

(a), under penalty of perjury, the applicant shall:

> (1) (i) specify the evidence to be tested;
>
> (ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and
>
> (iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the [***11] investigation of other crimes and may be used as evidence against the applicant in other cases.
>
> (2) (i) assert the applicant's actual innocence of the offense for which the applicant was convicted;
>
> * * *
>
> (3) present a prima facie case demonstrating that the:
>
> (i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and
>
> (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:
>
> (A) the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa. C.S.A. § 9543.1.

[*P6] In this instance, Appellant contends that if DNA testing was performed on the bloodstained pants, shoes, knife and washcloth found in his home, the results of the test would prove that the blood was consistent with his blood and not that of the victim, as both he and the victim have type "O" blood. Appellant further alleges that, because the identity of the perpetrator was at issue in the proceedings, DNA testing of these items will prove his actual innocence. While Appellant [***12] acknowledges that the victim's son identified him as the assailant, Appellant argues that this identification was unreliable and, as such, the only evidence that linked him to the crime was the bloodstained articles upon which he now requests DNA testing be performed. Thus, Appellant contends that the PCRA court erred in dismissing his request for testing.

[*P7] In finding that the facts of this case disqualified Appellant from the relief requested,

the PCRA court stated:

> [Appellant] never raised the issue of "identity" at trial nor does he allege any such facts in his PCRA petition. He merely asserts that he "is innocent of this crime and have been trying to prove it for the past 28 years". Even the most cursory review of the record in this case reveals that the only issues that ever existed were those of a procedural nature, and that "identity" and "actual innocence" were never real factors in the pre-trial or trial proceedings, direct appeal, post-conviction petitions, or the instant attempt to obtain the right to DNA testing.
>
> First, [Appellant] gave a full confession to the murder in which he spelled out the circumstances surrounding the stabbing of Marlene [***13] Mapp. Though there is arguably some question as to its legal admissibility, given the unsettled state of the law at that time for juvenile [**726] confessions, [3] there can be no question that it totally undermines [Appellant's] ability to avow "actual innocence". The confession was not introduced into evidence at [Appellant's] trial, but the Superior Court evaluated the circumstances surrounding it in their 1993 opinion, and held as follows[:]
>
>> No evidence can be found to suggest that appellant was subjected to physical or psychological abuse, nor were any threats or promises utilized to induce his inculpatory statement. Thus appellant's confession, when studied in the light of the *Christmas* standard, does not appear to have been an egregious violation of his rights. We conclude that the confession was voluntarily made. [*Commonwealth v. Young*, 432 Pa. Super. 693, 635 A.2d 209 (Pa. Super. 1993) (unpublished memorandum) (No. 3312 PHL 1992, filed August 20, 1993, at p. 7)].
>
> In addition, the deceased's son testified at trial and positively identified [Appellant] as the assailant who pulled out a knife in his mother's bedroom, and then [***14] [ran] down the stairs to escape. Larry Mapp's testimony that he recognized [Appellant] as his "rear yard" neighbor erased any doubt that there were questions about his identification of him or the "identity" of the perpetrator of this gruesome murder.
>
> Finally, the numerous items of physical evidence militate strongly against any contention that the identity of the accused was or is in issue, or that a rational claim of "actual innocence" could be asserted. The deceased's blood covered numerous items that were taken from [Appellant's] house within hours after the murder was committed. There was also a butcher knife with traces of human blood found in his kitchen, and blood was also detected on the kitchen sink drain board.
>
> Trial testimony from expert witnesses confirmed that all of the blood in the house and on the items found in it matched the blood of the deceased. Even without the confession and the eyewitness identification, the physical evidence alone constituted overwhelming indicia of guilt and leaves virtually no doubt as to the identity of the perpetrator of this crime.

PCRA Court Opinion, 3/17/04, at 9-11.

## FOOTNOTES

3 At the time of Appellant's confession, our Supreme Court had articulated a rule in **Commonwealth v. McCutchen**, 463 Pa. 90, 343 A.2d 669 (1975), which provided that a juvenile could not "effectively waive his constitutional rights to remain silent and to have assistance of counsel without first being accorded an opportunity to consult with an adult who is interested in that juvenile's welfare[.]" **Commonwealth v. Christmas**, 502 Pa. 218, 222, 465 A.2d 989, 991 (1983). Subsequently, in **Christmas**, the Court explicitly overruled **McCutchen** and replaced the per se rule with a totality of the circumstances standard for judging a juvenile's waiver of rights as a voluntary and knowing one. Specifically, the Court in **Christmas** found that the circumstances to be considered in such a determination "include the manner in which the juvenile was treated by police authorities, as well as the juvenile's age, experience, background intelligence, capacities and prior record." **Id**. 502 Pa. at 224, 465 A.2d at 992. While we are cognizant that **Christmas** has since been overruled in part by **Commonwealth v. Williams**, 504 Pa. 511, 521, 475 A.2d 1283, 1287 (1984), in so far as **Christmas** created a rebuttable presumption that a juvenile is incompetent to waive his constitutional rights without first having an opportunity to consult with an interested and informed adult, our Supreme Court has retained the totality of the circumstances standard in determining whether a confession is knowing and voluntary.

**[\*\*\*15]  [\*P8]** Upon examination of the record, we disagree with the PCRA court's conclusion that Appellant did not raise the issue of identity at trial and/or in his current petition. **[\*\*727]** Clearly, at trial Appellant's counsel vigorously challenged the Commonwealth's witnesses on cross-examination regarding the evidence which linked Appellant to the crime and in the identification of Appellant as the perpetrator. Appellant's counsel further postulated in his arguments to the jury that the Commonwealth had failed to establish that Appellant had committed the crime and that the identification of Appellant by the victim's seven-year old son at trial was unreliable due to the boy not identifying Appellant until trial and then only after the police and district attorney's office suggested to him that Appellant was the man that had killed his mother. Similarly, in his PCRA petition requesting DNA testing, Appellant alleges that he was innocent of the offense and that his identity as the perpetrator of the crime has always been an issue. Thus, the PCRA court's findings in this regard are in error.

**[\*P9]** The PCRA court further mischaracterizes the evidence at trial when it states that expert **[\*\*\*16]** witnesses at trial confirmed that all of the blood on the items found within Appellant's home matched the blood of the deceased. At trial, the Commonwealth's expert witness, Joseph A. Vorozilchak, a chemist from the Philadelphia Police Department, testified that he had performed analysis on the blood to determine whether the blood was human or animal. While Mr. Vorozilchak confirmed that the blood found on all items in Appellant's home was human, he further conceded that he did not perform any testing to determine blood type. Thus, the evidence presented at trial did not establish that the blood on the articles found in Appellant's home matched the blood type of the victim.

**[\*P10]** Notwithstanding these errors, we agree with the PCRA court's conclusion that Appellant has not met the prima facie requirements set forth in section 9543.1 necessary to entitle him to the requested DNA testing. Although Appellant has claimed his innocence in his motion, we find that his confession to the murder bars him from asserting a claim of actual innocence for the offense for which he was convicted. *HN3*While a confession, in and of itself, generally would not bar such a request, an appellant cannot **[\*\*\*17]** assert a claim of actual innocence where, as here, the validity of the confession has been finally litigated, found not to be coerced, and was knowingly and voluntarily given. **See Commonwealth v. Starr**, 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995) (providing that under the law of the

case doctrine "a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court or by a higher court in the earlier phases of the matter). *Compare Williams*, 848 A.2d at 972 (holding that <u>section 9543.1</u> did not apply to defendant who plead guilty to endangering welfare of children as defendant's guilty plea nullified any subsequent claim that the "identity of or the participation in the crime by the perpetrator was at issue").

[*P11]  Moreover, even if we would have found Appellant's confession did not bar recourse pursuant to <u>Section 9543.1</u>, Appellant would still not be entitled to the relief requested. As the PCRA court noted above, the victim's son unequivocally identified Appellant as the person who had broken into their home and who had ordered him and his little sister out of the bedroom [***18] while producing a knife and holding it toward his mother. Although Appellant challenged the credibility of Larry Mapp's testimony and his identification of Appellant as the perpetrator, substantial evidence of identification was presented to the jury for their consideration. Thus, even assuming that the DNA testing of the [**728] pants, shoes, knife and washcloth produced exculpatory results, it would not be enough to establish Appellant's actual innocence of the offense for which he was convicted.

[*P12]  For the foregoing reasons, Appellant has failed to satisfy the requirement of <u>42 Pa. C.S.A. section 9543.1</u>. Accordingly, we affirm the PCRA court's order denying Appellant's request for DNA testing.

[*P13]  Order affirmed.

Service:    **Get by LEXSEE®**
Citation:   **2005 PA Super 142**
View:   Full
Date/Time:  Thursday, September 25, 2008 - 11:59 AM EDT

* Signal Legend:
● -  Warning: Negative treatment is indicated
▦ -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
🅐 -  Citing Refs. With Analysis Available
🅘 -  Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

<u>Search</u> | <u>Research Tasks</u> | <u>Get a Document</u> | *<u>Shepard's</u>®* | <u>Alerts</u> | <u>Transactional Advisor</u> | <u>Counsel Selector</u>
<u>History</u> | <u>Delivery Manager</u> | <u>Switch Client</u> | <u>Preferences</u> | <u>Sign Out</u> | <u>Help</u>

 **LexisNexis®**   <u>About LexisNexis</u> | <u>Terms & Conditions</u> | <u>Contact Us</u>
<u>Copyright ©</u> 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT  B

STANDARD

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:08-cv-03463-BMS

YOUNG v. PHILADELPHIA COUNTY DISTRICT ATTORNEY'S OFFICE
Assigned to: HONORABLE BERLE M. SCHILLER
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 07/24/2008
Jury Demand: None
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**JOHN K. YOUNG**

represented by **JOHN K. YOUNG**
AF-5996
1000 FOLLIES ROAD
DALLAS, PA 18612
PRO SE

V.

**Defendant**

**PHILADELPHIA COUNTY
DISTRICT ATTORNEY'S OFFICE**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/24/2008 | 1 | APPLICATION TO PROCEED IN FORMA PAUPERIS by JOHN K. YOUNG. (tj, ) (Entered: 07/25/2008) |
| 07/29/2008 | 2 | MEMORANDUM AND ORDER THAT: THE PETITION IS DENIED WITHOUT PREJUDICE TO ITS REASSERTION IN ACCORDANCE WITH THE TERMS OF THIS ORDER; IF PLFF FILES WITH THE COURT WITHIN 30 DAYS FROM THE DATE OF THIS ORDER A NOTICE THAT HE WISHES TO PROCEED WITH THIS ACTION AND THEREBY OBLIGATE HIMSELF TO PAY THE $350 FILING FEE, THIS ACTION WILL BE REINSTATED; AND THE CLERK OF COURT SHALL CLOSE THIS CASE STATISTICALLY. SIGNED BY HONORABLE BERLE M. SCHILLER ON 7/29/08. 7/29/08 ENTERED AND COPIES MAILED.(fb) (Entered: 07/29/2008) |
| 08/28/2008 | 3 | MOTION BY JOHN K. YOUNG TO PROCEED.(fb) (Entered: 08/29/2008) |
| 09/04/2008 | 4 | ORDER THAT: PLFF'S MOTION TO PROCEED IN FORMA PAUPERIS IS HEREBY GRANTED. PLFF SHALL PAY THE FILING FEE OF $350 PURSUANT TO 28 U.S.C. SEC. 1915(b). THE COMPLAINT IS TO BE |

| | | |
|---|---|---|
| | | FILED, THE SUMMONS IS TO ISSUE, SERVICE OF THE SUMMONS AND COMPLAINT IS TO BE MADE UPON THE DEFT BY THE U.S. MARSHALS SERVICE IN THE EVENT THAT WAIVER OF SERVICE IS NOT EFFECTED UNDER FED.R.CIV.P. 4(d)(2). THE CLERK OF COURT IS DIRECTED TO SEND A COPY OF THIS ORDER TO THE SUPERINTENDENT OF SCI-DALLAS. SIGNED BY HONORABLE BERLE M. SCHILLER ON 9/4/08.9/4/08 ENTERED AND COPIES MAILED.(fb) (Entered: 09/04/2008) |
| 09/04/2008 | 5 | COMPLAINT against PHILADELPHIA COUNTY DISTRICT ATTORNEY'S OFFICE, filed by JOHN K. YOUNG.(fb) (Entered: 09/04/2008) |
| 09/04/2008 | 6 | REQUEST FOR WAIVER of Service sent to DEFENDANT on 9/4/08. Waiver of Service due by 10/6/2008. (fb) (Entered: 09/04/2008) |
| 09/04/2008 | 7 | Notice to Plff, re: Waiver of Service. (fb) (Entered: 09/04/2008) |
| 09/11/2008 | | Filing fee: $ 5.61, receipt number 114803 (jms, ) (Entered: 09/15/2008) |
| 09/19/2008 | 8 | WAIVER OF SERVICE Returned Executed PHILADELPHIA COUNTY DISTRICT ATTORNEY'S OFFICE waiver sent on 9/4/2008, answer due 11/3/2008. (gs, ) (Entered: 09/22/2008) |
| 09/22/2008 | 9 | WAIVER OF SERVICE Returned Executed by JOHN K. YOUNG. (pr, ) (Entered: 09/22/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/03/2008 08:02:15 | | |
| **PACER Login:** | pd0099 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:08-cv-03463-BMS |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

# EXHIBIT  C

(03/08) Notice of a Lawsuit and Request to Waive Service of a Summons

UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| **John K. Young** | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No.    08-3463 |
| **Philadelphia County District Attorney's Office** | ) | |
| Defendant | ) | |

**Notice of a Lawsuit and Request to Waive Service of a Summons**

SEP 05 2008

FEDERAL LIT

To:   **Philadelphia County District Attorney's Office**

_____

*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above.  A copy of the complaint is attached.

This is not a summons, or an official notice from the court.  It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must return the signed waiver within   _30_  days *(give at least 30 days or at least 60 days if the defendant is outside any judicial district United States)* from the date shown below, which is the date this notice was sent.  Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court.  The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you.  And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date  September 4, 2008

_____
Fernando Benitez, Jr., Deputy Clerk
**Printed name**

Civil Litigation
SEP 0 8 2008

_____
**Address**

_____
**E-mail address**

_____
**Telephone number**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**ENTERED**

| | | |
|---|---|---|
| JOHN K. YOUNG | : | CIVIL ACTION |
| | : | SEP - 4 2008 |
| v. | : | |
| | : | FILED   SEP 4 2008   CLERK OF COURT |
| PHILADELPHIA COUNTY DISTRICT | : | |
| ATTORNEY'S OFFICE | : | NO. 08-3463 |

O R D E R

AND NOW, this 4 day of September, 2008, having considered plaintiff's 42 U.S.C. § 1983 civil rights complaint and motion to proceed in forma pauperis, it is hereby ORDERED that:

1.    Plaintiff's motion to proceed in forma pauperis is hereby GRANTED.

2.    Plaintiff shall pay the filing fee of $350 pursuant to 28 U.S.C. § 1915(b). Based on plaintiff's financial statement, an initial partial filing fee of $5.61 is assessed. The Superintendent or other appropriate official at SCI-Dallas, where plaintiff is presently incarcerated under ID# AF-5996, or at any other correctional facility at which plaintiff may be incarcerated, is directed to deduct $5.61 from plaintiff's inmate account, when such funds become available, and forward that amount to the Clerk of the United States District Court for the Eastern District of Pennsylvania, 2609 U.S. Courthouse, Philadelphia, PA 19106, to be credited to Civil Action No. 08-3463. After the initial partial filing fee is collected and until the full filing fee is paid, the Superintendent or other

1

appropriate official at SCI-Dallas or at any prison at which
plaintiff may be incarcerated, shall deduct from plaintiff's
account, each time that plaintiff's inmate account exceeds $10,
an amount no greater than 20 percent of the money credited to his
account during the preceding month and forward that amount to the
Clerk of Court at the address provided above to be credited to
Civil Action No. 08-3463.

      3.   The complaint is to be filed, the summons is to
issue, service of the summons and complaint is to be made upon
the defendant by the U.S. Marshals Service in the event that
waiver of service is not effected under Fed.R.Civ.P. 4(d)(2).
To effect waiver of service the Clerk of Court is specially
appointed to serve a written waiver request on the defendant.
The waiver of service request shall be accompanied by a copy of
the complaint and shall inform the defendant of the consequences
of compliance and of failure to comply with the request.   The
request shall allow the defendant at least 30 days from the date
it is sent (60 days if addressed outside any judicial district of
the United States) to return the signed waiver.   If a signed
waiver is not returned within the time limit given, the Clerk of
Court's office shall transmit the summons and a copy of the
complaint to the U.S. Marshals Service for immediate service
under Fed.R.Civ.P. 4(c)(1), and a copy of this order is to be
directed to all parties.

      4.   All original pleadings and other papers submitted
for consideration to the Court in this case are to be filed with

the Clerk of this Court.  Copies of papers filed in this Court are to be served upon counsel for all other parties (or directly on any party acting pro se).  Service may be by mail.  Proof that service has been made is provided by a certificate of service. This certificate should be filed in the case along with the original papers and should show the day and manner of service. An example of a certificate of service by mail follows:

> "I,    (name)    , do hereby certify
> that a true and correct copy of the
> foregoing (name of pleading or other
> paper) has been served upon (name(s)
> of person(s) served) by placing the same
> in the U.S. Mail, properly addressed,
> this (date) day of    (month)    , (year).
>
> _____
>               (Signature)"

If any pleading or other paper submitted for filing does not include a certificate of service upon the opposing party or counsel for opposing party, it may be disregarded by the Court.

5.    Any request for court action shall be set forth in a motion, properly filed and served.  The parties shall file all motions, including proof of service upon opposing parties, with the Clerk of Court.  The Federal Rules of Civil Procedure and local rules are to be followed.  Plaintiff is specifically directed to comply with Local Civil Rule 7.1 and serve and file a proper response to all motions within fourteen (14) days. Failure to do so may result in dismissal of this action.

6.    Plaintiff is **not** required to comply with Section 4:01 of the Civil Justice Expense and Delay Reduction Plan for

the United States District Court for the Eastern District of Pennsylvania (the "Plan"), unless directed by further Order of the Court.

7.    Plaintiff is specifically directed to comply with Local Rule 26.1(f) which provides that "[n]o motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery or pursuant to this rule shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute." Plaintiff shall attempt to resolve any discovery disputes by contacting defendant's counsel directly by telephone or through correspondence.

8.    No direct communication is to take place with the District Judge or United States Magistrate Judge with regard to this case.  All relevant information and papers are to be directed to the Clerk.

9.    In the event the summons is returned unexecuted, it is plaintiff's responsibility to ask the Clerk of the Court to issue an alias summons and to provide the Clerk with the defendant's correct address, so service can be made.

10.   The parties should notify the Clerk's Office when there is an address change.  Failure to do so could result in court orders or other information not being timely delivered, which could affect the parties' legal rights.

4





**FORM TO BE USED BY A PRISONER FILING A
42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### I. CAPTION

John K Young

*(Enter the full name of the plaintiff or
plaintiffs)*

v.

Philadelphia County District

Attorney's Office

*(Enter the full name of the defendant or
defendants)*

**FILED**

SEP 24 2008

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

### II. PARTIES

**a. Plaintiff**

Full name: John K Young

Prison identification number: AF5996

Place of present confinement: SCI Dallas

Address: 1000 Follies Road, Dallas, Pa 18612

Place of confinement at time of incidents or conditions alleged in
complaint, including address:

SCI Dallas

*Additional plaintiffs: Provide the same information for any additional
plaintiffs on the reverse of this page or on a separate sheet of paper.*

**b. Defendants: (list only those defendants named in the caption of the
complaint, section I)**

1. **Full name including title:** Philadelphia County District Attorney's Office

   Place of employment and section or unit: _____

2. **Full name including title:** N/A

   Place of employment and section or unit: N/A

3. **Full name including title:** N/A

   Place of employment and section or unit: N/A

4. **Full name including title:** N/A

   Place of employment and section or unit: N/A

*Additional defendants: Provide the same information for any additional
defendants on the reverse of this page or on a separate sheet of paper.*

**Page 1**

### III. PREVIOUS LAWSUITS

**Instructions:**

If you have filed other lawsuits in any federal or state court dealing with the same facts as this complaint or other facts related to your imprisonment, you must provide the information requested be. w.  If you have not filed other lawsuits, proceed to Section IV, Admin: -ative Remedies, on this page.

If you have filed other lawsuits, provide the following informa. on.

Parties to your previous lawsuit:

Plaintiffs ___N/A_____

Defendants ___N/A_____

Issues: _____

_____

Court: if federal, which district? _____

if state, which county? _____

Docket number: _____ Date filed: _____

Name of presiding judge: _____

Disposition: (check correct answer(s)); Date: _____

Dismissed ___ Reason? _____

Judgment ___ In whose favor? _____

Pending ___ Current status? _____

Other ___ Explain _____

Appeal filed? ___ Current status? _____

Additional lawsuits. Provide the same information concerning any other lawsuits you have filed concerning the same facts as this action or other facts related to your imprisonment. You may use the back of this page or a separate sheet of paper for this purpose.

### IV. ADMINISTRATIVE REMEDIES

**Instructions:**

Provide the information requested below if there is an administrative procedure to resolve the issues you raise in this complaint. Examples of administrative procedures include review of grievances, disciplinary action, and custody issues.  If no administrative procedures apply to the issues in this complaint, proceed to Section V, Statement of Claim, on page 4.

a. **Describe the administrative procedures available to resolve the issues raised in this complaint:**

   ' **Type of procedure.** (grievance, disciplinary review, etc.)

   N/A

   **Authority for procedure.** (DC-ADM, inmate handbook, etc.)

   N/A

   **Formal or informal procedure.**  N/A

   **Who conducts the initial review?**  N/A

   **What additional review and appeals are available?**  N/A

b. **Describe the administrative procedures you followed to resolve the issues raised in this complaint before filing this complaint:**

   **On what date did you request initial review?**  N/A

   **What action did you ask prison authorities to take?**  N/A

   **What response did you receive to your request?**  N/A

   **What further review did you seek and on what dates did you file the requests?**  N/A

   **What responses did you receive to your requests for further review?**

   N/A

c. **If you did not follow each step of the administrative procedures available to resolve the issues raised in this complaint explain why.**

   N/A

## V. STATEMENT OF CLAIM

**Instructions:**

State here as briefly as possible the facts of your case.  Use plain
language and do not make legal arguments or cite cases or statutes.
State how each defendant violated your constitutional rights.  Although
you may refer to any person, make claims only against the defendants
listed in the Caption, Section I.  Make only claims which are factually
related.  Each claim should be numbered and set forth in a separate
paragraph with an explanation of how the defendants were involved.  Use the
reverse of this page or a separate sheet of paper if you need more space.

**Statement of claim:**

See attached sheet of paper marked "Statement of Claim"

## VI. RELIEF

**Instruction:** Briefly state exactly what you want the Court to do for you.

**Relief sought:**

A DNA Test on physical evidence used at trial.

## VII. DECLARATION AND SIGNATURE

I (we) declare under penalty of perjury that the foregoing is true and
correct.

July 4, 2004
_____
DATE

_____
(SIGNATURE OF PLAINTIFF(S)

Page 4

"Statement of Claims"

1. In denying DNA testing and access to the physical evidence, the Commonwealth (namely the District Attorney's Office) has deprived the plaintiff of the opportunity to effectively litigate his claim that he is innocent of the crime, thereby preventing him from access to the State and federal courts to obtain legal relief in violation of the Due Process Clause of the Fourteenth Amendment

2. Denying DNA testing, using an unused confession as a means to bar plaintiff from asserting "actual innocence", deprived plaintiff of his right to present evidence of innocence in State Court, federal Court or before the Pennsylvania State Board of Pardons, in violation of the Confrontation and Compulsory Process Clause of the Sixth Amendment.

. The Commonwealth in denying plaintiff access to the DNA evidence and a right to conduct testing upon the physical evidence using technology that was unavailable at the time of his trial and at the time his conviction became final is in violation of his due process rights under the Due Process Clause of the Fourteenth Amendment.

. The Commonwealth violated plaintiff's due process rights by denying him access to potentially favorable evidence, when said evidence were used to convict him, in violation of the Due Process Clause of the Fourteenth Amendment.

. The Commonwealth violated plaintiff's substantive right to post conviction DNA testing when said test could raise serious doubts to the original verdict, in violation of the Due Process Clause of the Fourteenth Amendment.

The Commonwealth in denying plaintiff access to potentially exculpatory DNA evidence violates plaintiff's due process right to access the courts in violation of the Due Process Clause of the Fourteenth Amendment.

7. The Continuing denial of allowing plaintiff access to DNA testing on the physical evidence amounts to cruel and unusual punishment in violation of the Eighth Amendment.

8. The Commonwealth in violating plaintiff's right to due process, exposed him to cruel and unusual punishment and denied plaintiff the right to present evidence regarding his innocence, in violation of the Eighth Amendment and Fourteenth Amendment.

9. The Commonwealth in denying plaintiff access to the physical evidence and DNA testing of said evidence has violated his procedural due process right in violation of the Due Process Clause of the Fourteenth Amendment.

AO 399 (03/08) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

| | |
|---|---|
| __John K. Young__ | ) |
| Plaintiff | ) |
| v. | )    Civil Action No.    08-3463 |
| __Philadelphia County District Attorney's Office__ | ) |
| Defendant | ) |

### Waiver of the Service of Summons

To: __John K. Young__
    *(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____September 4, 2008_____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date _____

 

            _____
                   *Signature of the attorney or unrepresented party*

            _____
                          *Printed name*

            _____
                             *Address*

            _____
                         *E-mail address*

            _____
                       *Telephone number*

---

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 399 (03/08) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the

### Eastern District of Pennsylvania

| | | | |
|---|---|---|---|
| **John K. Young** | ) | | |
| Plaintiff | ) | | |
| v. | ) | Civil Action No. | 08-3463 |
| **Philadelphia County District Attorney's Office** | ) | | |
| Defendant | ) | | |

### Waiver of the Service of Summons

To:  John K. Young

*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from       September 4, 2008      , the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date _____

_____
Signature of the attorney or unrepresented party

_____
Printed name

_____
Address

_____
E-mail address

_____
Telephone number

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.