IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN K. YOUNG, : | |
|     Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | |
| : | |
| PHILADELPHIA COUNTY DISTRICT : | |
| ATTORNEY'S OFFICE and CITY OF : | |
| PHILADELPHIA, : | No. 08-3463 |
|     Defendants. : | |

**MEMORANDUM AND ORDER**

**Schiller, J.**                                                                                                                          **February 5, 2009**

Plaintiff John K. Young, proceeding *pro se*, brings this action, pursuant to 42 U.S.C. § 1983, against the Philadelphia County District Attorney's Office ("D.A.'s Office") and the City of Philadelphia alleging they have violated his constitutional rights by denying him DNA testing of physical evidence used to convict him of murder. The only relief Plaintiff seeks is an order requiring Defendants to perform this DNA testing. Currently before the Court is the D.A.'s Office's motion to dismiss. For the following reasons, the motion is granted.[1]

**I.   BACKGROUND**

    **A.   Procedural history of Young's criminal case**

On March 11, 1975, Plaintiff was arrested and charged with the murder of Marlene Mapp.[2]

---

[1] Because the City was recently added as a Defendant, it has not yet been served. However, because the Court concludes that Plaintiff's action is barred by the statute of limitations, the case is dismissed as to all Defendants.

[2] The facts are taken from the Pennsylvania Supreme Court's opinion affirming Young's conviction, *Commonwealth v. Young*, 383 A.2d 899 (Pa. 1978), the Superior Court's decision denying Young's first petition for post-conviction relief, *Commonwealth v. Young*, 465 A.2d 684 (Pa. Super. Ct. 1983), and the Superior Court's opinion denying Young's post-conviction motion

On that date, Ms. Mapp's neighbor, Jacqueline Mack, heard screaming and footsteps coming from the Mapp residence. She also heard Ms. Mapp's six-year old son, Larry Mapp, telling someone to "leave his mother alone." Ms. Mack called the police and then called over to the house. Larry answered the phone and stated that his mother had been stabbed.

Ms. Mack went to the Mapp residence and found Larry covered in blood. Shortly thereafter, the police arrived and found Ms. Mapp against the front door at the foot of the staircase. Her purse was lying open on the living room sofa and its contents were strewn about the room. The front door was locked; police determined that the perpetrator entered via the back door by unlatching it with a coat hanger. Additionally, the police found a blood-stained black scarf in the backyard.

The police went to the house directly behind the Mapp home and asked Young, who was four months shy of eighteen at the time, to accompany them to the station to answer some questions. At the station, he was placed in an interrogation room and advised of his *Miranda* rights. Young eventually admitted that he broke into the home and killed Ms. Mapp when she tried to disarm him.[3] During a search of Young's home pursuant to a warrant, the police seized a knife, shoes, pants and a washcloth, all of which were stained with human blood and introduced at trial. Additionally, Larry Mapp testified at trial and identified Young as the perpetrator. Young was convicted of murder, burglary, and related charges on August 26, 1975. He was subsequently sentenced to life imprisonment for the murder conviction and a concurrent ten to twenty years imprisonment for the burglary conviction.

---

for DNA testing pursuant to a Pennsylvania statute, *Commonwealth v. Young*, 873 A.2d 720 (Pa. Super. Ct. 2005).

[3] Young's confession was not introduced into evidence at trial.

Young appealed directly to the Supreme Court of Pennsylvania, which rejected his sole argument — that he was deprived of a fair trial because the prosecutor made improper remarks during closing argument — and affirmed Young's conviction. *Young*, 383 A.2d 899. Young subsequently filed an unsuccessful Post Conviction Hearing Act ("PCHA") petition in the Court of Common Pleas, primarily arguing that his confession was obtained in violation of his constitutional rights and that his trial counsel had been ineffective for failing to raise on appeal both this issue and an alleged violation of his Fourth Amendment rights. The Superior Court affirmed the Court of Common Pleas's rejection of these and other challenges, noting that counsel could not have been ineffective in failing to attack on appeal a confession that was never introduced into evidence. *Young*, 465 A.2d 684. In a second PCHA petition, Young asserted that the trial court committed reversible error by permitting the introduction of physical evidence that, as the fruit of his involuntary confession, was improperly seized. *Young*, 873 A.2d at 722 (citing *Commonwealth v. Young*, 635 A.2d 209 (Pa. Super. Ct. 1993) (Table)). In rejecting this petition, the Superior Court determined that Young's confession was voluntary. *Id.* at 726. Thereafter, Young unsuccessfully petitioned the Supreme Court of Pennsylvania to hear his appeal. *Commonwealth v. Young*, 642 A.2d 485 (Pa. 1994) (Table).

On January 12, 1996, Young filed, in federal district court, a petition for a writ of habeas corpus, which was ultimately denied. *Young v. Frank*, Civ. A. No. 96-215 (E.D. Pa.) (Docket) [hereinafter "Habeas Docket"]. The Third Circuit Court of Appeals subsequently denied Young's request for a certificate of appealability and his federal case was closed on May 6, 1997. (*Id.*)

**B.     Young's attempts to obtain post-conviction DNA testing**

On November 27, 2002, Young filed a motion in the Court of Common Pleas — pursuant

3

to Pennsylvania's Post-Conviction Relief Act, 42 Pa. Cons. Stat. Ann. § 9543.1 — requesting that the court order DNA testing on the blood-stained items the police seized from his home. Pursuant to that statute, a movant is entitled to DNA testing on evidence used to convict him where the movant: (1) asserts that he is actually innocent of the offense for which he was convicted; and (2) presents a *prima facie* case demonstrating that the identity of the perpetrator was an issue at trial and that DNA testing, assuming exculpatory results, would establish actual innocence. Young sought to establish, through DNA testing, that the blood on the items found in his home was his blood, not that of the victim. The Commonwealth filed an opposition on June 2, 2003, and the court subsequently denied Young's motion.

On appeal, the Pennsylvania Superior Court affirmed the Court of Common Pleas's denial of Young's motion. The Superior Court concluded that Young's identity was an issue at trial. However, the court found that Young failed to establish a *prima facie* case under the statute because "his confession to the murder bars him from asserting a claim of actual innocence for the offense for which he was convicted." *Young*, 873 A.2d at 727; *see also id.* ("[A]n appellant cannot assert a claim of actual innocence where, as here, the validity of the confession has been finally litigated, found not to be coerced, and was knowingly and voluntarily given."). Furthermore, Young could not show actual innocence because Larry Mapp, the victim's son, unequivocally identified Young at trial as the perpetrator. Young appealed to the Supreme Court of Pennsylvania, which denied his petition for allowance of appeal. *Commonwealth v. Young*, 891 A.2d 733 (Pa. 2005) (Table).

On June 3, 2006, Young sought permission to file a second habeas petition so that he could further pursue DNA testing. (Pl.'s Resp. to Def.'s Mot. to Dismiss [hereinafter "Pl.'s Resp."] Ex. A [Req. for Permission to File a Second Habeas Corpus Pet.].) In this filing, Young alleged that

4

the state court, in denying his motion for post-conviction DNA testing, suppressed exculpatory evidence, violated his due process rights and his Sixth Amendment rights, and precluded him from proving actual innocence. The Third Circuit denied Young's petition on August 8, 2006. (Habeas Docket No. 29.)

Young again attempted to acquire DNA testing in July of 2007, when he filed a motion in federal district court for post-conviction DNA testing pursuant to the federal Innocence Protection Act of 2004, 18 U.S.C. § 3600. (Pl.'s Resp. Ex. B [Mot. for Post Conviction DNA Testing Pursuant to Justice for All Act of 2004].) The court denied Young's motion, concluding that he could not seek relief under this statute because he was convicted of a state, not a federal, offense. *Young v. Wynder*, Civ. A. No. 07-2847, 2008 WL 2227532, at *1 (E.D. Pa. May 23, 2008). However, in a footnote, the court noted that it expressed no opinion "on the merits of any 42 U.S.C. § 1983 claim which Young may file, or whether such a claim can be brought in the Third Circuit where there is no controlling law." *Id.* at *2 n.2.

Having been alerted to the possibility of using Section 1983 to acquire DNA testing on the physical evidence found in his home, Young filed the instant action on September 4, 2008 against the D.A.'s Office. With the Court's permission, Young amended his Complaint on December 5, 2008 to add the City of Philadelphia as a defendant.[4] Young alleges that by denying him DNA testing, Defendants violated his substantive and procedural due process rights, his Sixth Amendment rights, and his Eighth Amendment rights. He seeks "access to the physical evidence for the purpose

---

[4] The District Attorney's Office is not a separate legal entity subject to Section 1983 liability, which provides an alternative basis for dismissing the D.A.'s Office as a Defendant. *See Cruz v. City of Phila.*, 07-493, 2007 WL 2317372, at *5 (E.D. Pa. Aug. 7, 2007). The amendment did not change the substantive allegations of the Complaint.

of DNA testing and [to] have said testing done on behalf of plaintiff by the Commonwealth." (Am. Compl. at 3.)

The existence and scope of a constitutional right to post-conviction DNA testing are matters that federal courts have grappled with and that the Supreme Court is expected to address in upcoming months.[5]  However, these matters are not before the Court at this time.  Instead, the instant motion to dismiss argues that: (1) pursuant to the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction over Plaintiff's Complaint; (2) the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiff's lawsuit; and (3) the statute of limitations bars Plaintiff's lawsuit.  In his *pro se* response, Young asserts that his action is neither barred by *Rooker-Feldman* nor by *Heck*, and that this Court should apply equitable tolling to save his lawsuit from the statute of limitations.

## II. STANDARD OF REVIEW

Challenges to subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure

---

[5] *Compare Osborne v. Dist. Attorney's Office for the Third Judicial Dist.*, 521 F.3d 1118, 1132 (9th Cir. 2008) (due process right to post-conviction DNA testing exists as extension of *Brady v. Maryland*, 373 U.S. 83 (1963)), *cert. granted*, 129 S. Ct. 488 (2008); *Breest v. Attorney Gen. for the State of N.H.,* Civ. A. No. 06-361, 2008 WL 183240, at *7 (D.N.H. Jan. 18, 2008) ("A federal right to post-conviction access to biological material directly relevant to criminal guilt or innocence, for DNA testing purposes, does exist."); *Wade v. Brady*, 460 F. Supp. 2d 226, 243 (D. Mass. 2006) (finding due process right to DNA testing); *Godschalk v. Montgomery County Dist. Attorney's Office*, 177 F. Supp. 2d 366, 368-69 (E.D. Pa. 2001) (same) *with Grayson v. King*, 460 F.3d 1328, 1342-42 (11th Cir. 2006) (holding, without foreclosing the possibility that a constitutional right to post-conviction DNA testing exists in some circumstances, that the plaintiff could not establish any constitutional violation); *Alley v. Key*, App. No. 06-5552, 2006 WL 1313364, at *1 (6th Cir. May 14, 2006) ("[W]e agree for purposes of the dispute now before us, with the district court's ruling that there exists no general constitutional right to post-judgment DNA testing.").

12(b)(1), may be facial or factual. *Medina v. City of Phila.*, Civ. A. No. 04-5698, 2005 WL 1124178, at *2 (E.D. Pa. May 9, 2005) (*citing Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)), *aff'd*, 219 Fed. Appx. 169 (3d Cir. 2007). "In a facial attack, a defendant argues that the plaintiff did not properly plead jurisdiction . . . [whereas] a 'factual' attack asserts that jurisdiction is lacking on the basis of facts outside of the pleadings." *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005). When a defendant brings a factual attack, as Defendants do here, the Court may consider matters outside the pleadings to determine its jurisdiction. *See Gordon v. E. Goshen Twp.*, — F. Supp. 2d — , Civ. A. No. 08-4682, 2009 WL 69878, at *4, *6 (E.D. Pa. Jan. 13, 2009) (*Rooker-Feldman* challenge represents factual attack on jurisdiction). Plaintiff bears the burden of illustrating that the Court's jurisdiction is proper. *Packard v. Provident Nat'l Bank*, 994 F.3d 1039, 1045 (3d Cir. 1999).

In reviewing a defendant's motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers and Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001). To survive a motion to dismiss, a complaint must include "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]" of Plaintiff's claims. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007)). Since Plaintiff is proceeding *pro se*, the Court must construe his Complaint liberally and "apply the applicable law, irrespective of whether [Plaintiff] has mentioned it by name." *Hutchinson v. Pa. Dep't of Public Welfare*, Civ. A. No. 05-1724, 2005 WL 2562721, at *2 (E.D. Pa. Oct. 11, 2005) (internal quotations omitted). Furthermore, in ruling on a motion to dismiss, a court may consider matters of public

record. *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 190 n.3 (1999).

**III.   DISCUSSION**

    **A.   The *Rooker-Feldman* doctrine does not bar Plaintiff's lawsuit**

The D.A.'s Office first argues that Plaintiff's suit is barred by the *Rooker-Felman* doctrine because Plaintiff raised these claims in state court when he filed an unsuccessful motion for DNA testing pursuant to 42 Pa. Cons. Stat. Ann. § 9543.1. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss at 8 ("[P]laintiff has pursued these claims at the state court level, and the state courts have already rejected them.").)  Plaintiff counters that the *Rooker-Feldman* doctrine is inapplicable because he is not seeking to redress an injury caused by the state court. Rather, by asserting constitutional legal theories that he did not raise in state court, he is seeking relief for a condition that existed prior to the state court proceedings.

The *Rooker-Feldman* doctrine deprives federal courts of subject-matter jurisdiction in some circumstances when a federal lawsuit follows a related state lawsuit. In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005), the Supreme Court limited the *Rooker-Feldman* doctrine, holding that it only divests federal courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." The Court emphasized the narrow scope of the *Rooker-Feldman* doctrine and chided lower courts for their overbroad application of it. *Id.*; *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006) (per curiam) ("Neither *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to emphasize the

narrowness of the *Rooker-Feldman* rule."). After *Exxon*, it is clear that *Rooker-Feldman* no longer bars federal actions merely because of prior state proceedings based on the same dispute.[6] *See Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006).

In *McKithen v. Brown*, 481 F.3d 89 (2d Cir. 2007), the Second Circuit rejected a *Rooker-Feldman* challenge to a Section 1983 case in which the prisoner, who sought DNA testing of physical evidence, had previously lost a state-court motion seeking the same relief pursuant to a New York statute. The court reasoned:

> In seeking post-conviction access to, and DNA testing of, evidence, [plaintiff] could have chosen to bring either his state § 440.30 motion or his federal § 1983 suit first. As he chose to litigate in state court first, principles of preclusion might apply. But, given that [plaintiff] in federal court seeks redress for an injury that existed in its exact form prior to the state court judgment, he cannot be complaining of an injury 'caused by' the state court. Rather, the preexisting injury in this case is properly understood to have been 'simply ratified, acquiesced in, or left unpunished by [the state court].'

*Id.* at 98 (quoting *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)) (footnote omitted) (alterations in original). District courts considering this issue have come out the same way. *See McDaniel v. Suthers*, Civ. A. No. 08-00223, 2008 WL 4527697, at *6 (D. Colo. Oct. 2, 2008) (prisoner's Section 1983 action seeking DNA testing not barred by *Rooker-Feldman* even though plaintiff filed action after state court denied his motion, pursuant to state statute, for DNA testing); *Breest*, 2008 WL 183240, at *6 (prisoner's Section 1983 action not barred by *Rooker-*

---

[6] The D.A.'s Office relies solely on pre-*Exxon* Third Circuit precedent that broadly applied *Rooker-Feldman* to preclude subject matter jurisdiction over federal cases that were "inextricably intertwined" with related state cases. Post-*Exxon*, the Third Circuit has expressly questioned the validity of this pre-*Exxon* precedent. *Gary v. Braddock Cemetery*, 517 F.3d 195, 200 n.9 (3d Cir. 2008) (noting that "several circuit courts of appeals have revisited the appropriate contours of the 'inextricably intertwined' prong in the wake of the *Exxon* decision" and stating that "caution is now appropriate in relying on our pre-*Exxon* formulation of the *Rooker-Feldman* doctrine").

9

*Feldman* because "the prior state court orders in [plaintiff's] criminal case, denying his request for additional testing under state law, are not the 'cause' of his asserted injury here"); *Alley v. Key*, 431 F. Supp. 2d 790 (W.D. Tenn. 2006) (same); *Moore v. Lockyer*, Civ. A. No. 04-1952, 2005 WL 2334350 (N.D. Cal. Sept. 23, 2005) (same).

The instant case is indistinguishable from *McKithen* and the other cases that have rejected similar *Rooker-Feldman* challenges. Although there is no question that Plaintiff is a "state court loser" — his motion for DNA testing in state court was denied — Plaintiff's Section 1983 suit does not complain of an injury that was *caused* by the state court's denial of his motion. *See Hoblock*, 422 F.3d at 88 (requiring state court judgment to cause injury before *Rooker-Feldman* potentially applies). Accordingly, Plaintiff's lawsuit is not barred by the *Rooker-Feldman* doctrine.

      **B.**     ***Heck v. Humphrey* does not bar Plaintiff's claims**

Next, the D.A.'s Office asserts that Plaintiff's lawsuit is barred by *Heck v. Humphrey,* 512 U.S. 477 (1994), because success on his claims would imply the invalidity of his conviction. Plaintiff counters that *Heck* does not apply here because, should he succeed on his lawsuit, he will be granted only access to evidence for testing, which would not necessarily imply the invalidity of his conviction.

A prisoner may not use Section 1983 as a vehicle for challenging the fact or duration of his confinement. *Presier v. Rodriguez*, 411 U.S. 475, 488-90 (1973). Instead, any such challenges must be pursued in the form of a petition for habeas corpus relief. *Id.* In *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court, building upon this principle, held that a prisoner may not sustain a Section 1983 action for damages where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. That a prisoner requests injunctive relief

does not alter this principle: "a state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Although the Third Circuit has not yet addressed this issue, several other Circuit Courts of Appeal have rendered an opinion. In *Harvey v. Horan*, 278 F.3d 370 (4th Cir. 2002), Harvey, a prisoner, brought a Section 1983 action alleging that the state violated his due process rights by refusing to retest physical evidence used to convict him for rape. He sought retesting of that evidence in light of more accurate technology developed since his conviction. The Fourth Circuit construed Harvey's claim as "the first step in undermining his conviction" and therefore concluded that it was barred by *Heck*.[7] *Id.* at 376. Therefore, Harvey was limited to habeas corpus relief in pursuing DNA testing. The Fifth Circuit and, in an unpublished opinion, the Sixth Circuit, have followed *Harvey* in precluding Section 1983 claims brought by prisoners seeking access to biological testing of physical evidence used to convict them. *See Kutzner v. Montgomery County*, 303 F.3d 339, 340 (5th Cir. 2002) (per curiam) ("We agree with the analysis of the Fourth Circuit, which recently held, under *Heck*, that no § 1983 claim exists for injunctive relief to compel DNA testing."); *Boyle v. Mayer*, 46 F. App'x 340 (6th Cir. 2002) (affirming dismissal of Section 1983 action in which prisoner sought DNA testing because plaintiff's sole remedy was writ of habeas corpus).

---

[7] In a concurring opinion, Judge King disagreed with the majority's application of *Heck*, noting that the "act alone — providing Harvey with access to the biological evidence relating to his rape conviction — does not, in the words of Justice Scalia, 'necessarily imply' the invalidity of Harvey's conviction or sentence." *Harvey*, 278 F.3d at 382 (King, J. concurring in part and concurring in judgment).

In contrast, the Eleventh Circuit has concluded that *Heck* does not bar Section 1983 suits filed by prisoners to compel DNA testing on evidence used to convict them. In *Bradley v. Pryor*, 305 F.3d 1287 (11th Cir. 2002), the court pointed out that mere access to evidence does not necessarily imply the invalidity of a prisoner's conviction — indeed, the test results might inculpate the prisoner, exculpate the prisoner, or prove inconclusive. Furthermore, even if Bradley, the plaintiff in that case, prevailed on his Section 1983 claim, and the test results proved exculpatory, he would have had to initiate a completely different lawsuit in order to challenge his conviction. Accordingly, the Eleventh Circuit held that Bradley's Section 1983 action seeking post-conviction DNA testing was not barred by *Heck*. The Second, Seventh and Ninth Circuit Courts of Appeal and several district courts have reached the same conclusion. *McKithen*, 481 F.3d at 103 ("[E]ven if success for the plaintiff might well make it *more likely* that the plaintiff, in a subsequent proceeding, may eventually be able to make a showing that his conviction was unlawful, and even if a plaintiff's ultimate motive is to challenge his conviction — a post-conviction claim for access to evidence is cognizable under § 1983."); *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) ("We find the Eleventh and Ninth Circuits' interpretation and approach to be more consistent with *Preiser* and its progeny [than the contrary approach of the Fourth, Fifth and Sixth Circuits]."); *Osborne v. Dist. Attorney's Office for the Third Judicial Dist.*, 423 F.3d 1050, 1054 (9th Cir. 2005) ("join[ing] the Eleventh Circuit in holding that *Heck* does not bar a prisoner's § 1983 action seeking post-conviction access to biological evidence in the government's possession."); *McDaniel*, 2008 WL 4527697 (Section 1983 claim for post-conviction DNA testing not barred by *Heck*); *Breest*, 2008 WL 183240 (same); *Wade v. Brady*, 460 F. Supp. 2d 226 (D. Mass. 2006) (same); *see also Derrickson v. Del. County Dist. Attorney's Office*, Civ. A. No. 04-1569, 2006 WL 2135854 (E.D. Pa. July 26, 2006)

(prisoner's Section 1983 action to compel ballistics testing and examination of evidence used to convict him not barred by *Heck*).

After examining the relevant precedents, this Court concludes that this action is not barred by *Heck*. As several courts have already pointed out, mere access to evidence for purposes of subjecting that evidence to DNA testing does not *necessarily* imply the invalidity of Plaintiff's conviction. The test results could inculpate or exculpate Plaintiff, or they could be simply inconclusive. Furthermore, as the Eleventh Circuit noted, should the test results exculpate Plaintiff, he still must file a new lawsuit to challenge his conviction on that basis.

### C. Statute of limitations

The D.A.'s Office's final argument is that Plaintiff's lawsuit is barred by the statute of limitations. The applicable statute of limitations for Plaintiff's Section 1983 claims is two years — Pennsylvania's statute of limitations for personal injury torts. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) (state statute of limitations for personal injury torts applies in Section 1983 actions); *see also* 42 PA. CONS. STAT. ANN. § 5524 (2008). Plaintiff was therefore required to bring his claims within two years of when they accrued. "A section 1983 action accrues when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 598 (3d Cir. 1998).

The D.A.'s Office asserts that Plaintiff's claim accrued on March 11, 1975, when Plaintiff was arrested in connection with the murder. This position is, of course, preposterous, because the technology that Plaintiff seeks to apply to the physical evidence used to convict him did not exist in 1975 and thus, there is no way Plaintiff could have been aware of his cause of action at that time. The D.A.'s Office's alternative argument, that Plaintiff knew of his claim at least as of November

13

27, 2002, when he filed a motion in state court requesting DNA testing, is more realistic.

Regardless of the exact date of accrual, Plaintiff's claim is time-barred. It is clear that Plaintiff was aware of the existence of DNA testing, the possibility of applying it to physical evidence used to convict him, and Defendants' refusal to submit that evidence to testing when Plaintiff filed his motion in state court. Plaintiff himself admits that his state court motion and his federal lawsuit both seek to redress the same injury — Defendants' failure to submit evidence for DNA testing — illustrating that Plaintiff had sufficient factual knowledge to file his federal claims at the time he filed his state court motion on November 27, 2002. (*See* Pl.'s Mem. of Law in Supp. of Pl.'s Resp. at 1 ("[P]risoner in federal court is seeking redress for an injury that existed in its exact form prior to state-court judgment.").) Even if Defendants' willingness to submit the physical evidence to testing was unclear when Plaintiff filed in state court, Plaintiff should have been aware that Defendants did not intend to grant him access to the evidence when they opposed his motion. Furthermore, it is clear that Plaintiff was aware of the exact nature of his constitutional injury by June 3, 2006, when he sought permission from the Third Circuit to file a second habeas petition and listed, as a basis for his petition, the same violations of his constitutional rights he raises in this action. Accordingly, Plaintiff's Complaint, filed on September 4, 2008, is outside the two year statute of limitations.[8]  *See Moore v. Lockyer*, Civ. A. No. 04-1952, 2005 WL 2334350, at *5 (N.D. Cal. Sept. 23, 2005) (plaintiff's cause of action accrued in the mid-1990s when he filed for habeas corpus requesting that DNA testing be performed on evidence used to convict him); *see also Alley v. Key*, 431 F. Supp. 2d 790, 799 (W.D. Tenn. Apr. 20, 2006) ("It should have been clear to Plaintiff,

---

[8] Even using the July 24, 2008 date of Plaintiff's first motion to proceed *in forma pauperis* in this action, Plaintiff's claims are time-barred.

14

in May of 2004, that the State of Tennessee would not observe any constitutional right of access to evidence when the State refused to convey evidence upon his request in the state courts.") (footnote omitted).

Plaintiff, however, submits that even if his claims fall outside the statute of limitations, principles of equitable tolling should apply so that his action may proceed. Plaintiff argues that although he was aware of his injury, he was not aware that this injury gave rise to a cause of action under Section 1983. Instead, he believed he was limited to habeas corpus relief, which he pursued. Plaintiff states that he only became aware that he could use Section 1983 to obtain the desired relief after his motion for post-conviction DNA testing pursuant to the federal Innocence Protection Act was denied and the court, in its order, referenced the possibility of a Section 1983 action in a footnote.

Unless they conflict with federal law or policy, tolling principles of the forum state apply in Section 1983 actions. *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *see also* 42 U.S.C. § 1988. When the application of state tolling laws would "frustrate federal policy," "[federal] [e]quitable tolling can be applied to suits brought under the civil rights statutes." *Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000). In Pennsylvania, the statute of limitations may not be tolled except for fraud or concealment. *Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987); *see also Lake*, 232 F.3d at 367-68. The federal tolling doctrine is broader, permitting tolling: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994).

15

Even applying the more lenient federal tolling doctrine, there are no extraordinary circumstances here that would warrant equitable tolling. *See Savory*, 469 F.3d at 674 (rejecting plaintiff's argument that development of DNA technology is, itself, an extraordinary circumstance that triggers equitable tolling since the court had "already determined that [plaintiff's] claim did not accrue until after he surely was aware of how DNA technology might apply to his case" ); *see also id.* (disposing of the plaintiff's argument that his continued claims of innocence warranted equitable tolling because "if this were sufficient, the statute of limitations could virtually never run for § 1983 claims by prisoners"). Although Plaintiff sought relief in the form of a habeas petition, he long delayed filing a Section 1983 action. Of course, Plaintiff asserts that this is so because, although he was aware of his injury long before he filed this case, he was unaware that Section 1983 might provide him recourse. Ignorance of the law, however, is not a basis for tolling the statute of limitations. *See Sch. Dist. of Allentown v. Marshall*, 657 F.2d 16, 21 (3d Cir. 1981); *United States v. Clive*, 2008 WL 3889726, at *6 (W.D. Pa. Aug. 19, 2008) ("A petitioner's *pro se* status and ignorance of the law do not merit the tolling of the statute of limitations."). Accordingly, Plaintiff's claims are untimely and his case must be dismissed.

**IV.    CONCLUSION**

For the above-mentioned reasons, the D.A.'s Office's motion to dismiss is granted. Since Plaintiff's action is time-barred, it must be dismissed. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN K. YOUNG, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PHILADELPHIA COUNTY DISTRICT | : | |
| ATTORNEY'S OFFICE and CITY OF | : | |
| PHILADELPHIA, | : | No. 08-3463 |
|     Defendants. | : | |

## ORDER

AND NOW, this **5th** day of **February, 2009**, upon consideration of the Philadelphia County District Attorney's Office's motion to dismiss and Plaintiff's response thereto, and for the foregoing reasons, it is hereby **ORDERED** that:

1. The motion (Document No. 10) is **GRANTED**.

2. The Clerk of Court is directed to close this case.

BY THE COURT:

_____
**Berle M. Schiller, J.**

17